# IN RE SOLÁ É HIJO, S. EN C., Bankrupt.

San Juan, Bankruptcy, No. 61.

### AGRICULTURAL ADVANCES.

Bankruptcy Law—State Priorities.

1. For the purposes of administering the bankruptcy law Porto Rico is regarded in the same light as a state.

Priorities—Fertilizer.

2. Claims for fertilizer sold and used for cultivation in Porto Rico are creditos refaccionarios, and entitled to a preference under the Porto Rican law. This is as true in bankruptcy as in equity.

Fertilizer—Not Used for Cultivation.

3. The law establishes preferences upon the basis of the application of the supplies, and not upon that of the intention of the parties. Fertilizer is a charge upon the crop produced by it.

Preference—Civil Code, § 1824.

4. In refaccion agricultural credits recorded in the registry of property have a lien upon the property, the object of the loan, but not, if not so recorded.

Fertilizer—Refaccion.

5. Fertilizer obtained as an advance, but not applied to the land by the debtor, gives no lien.

Refaccion—Application.

6. The object of the refaccion law is to secure advances which have actually benefited the property. If the creditor wishes to lend

In Re Solá é Hijo.

money for general purposes, he must employ a mortgage. If for refaccion, he must see to the application of the money.

Refaccion.

7. Refaccion in Roman times applied to making over a house, and was extended by the Partidas, a later Spanish law, to neutralizing land for making a crop.

Evidence—Business Books.

8. The Code of Commerce requires a business house to keep strict books, and affixes a public penalty; but the burden is on the claimants of a refaccion to show the application of the fund, regardless of what the books may show.

Opinion filed December 28, 1914.

_Mr. Coll y Cuchi_ for claimants, Gandia & Stubbe.

HAMILTON, Judge, delivered the following opinion:

This comes up on a certificate of review of an order made by Referee Molina in the case of Solá é Hijo, S. en C. Gandia & Stubbe, as creditors of the bankrupt firm of Solá é Hijo, S. en C., filed a claim of $1,931.50 and another for $5,139.20 as preferred claims on the ground that they were for the sale of fertilizer to the bankrupt within ten months prior to the bankruptcy in May, 1912. The referee reports that he thinks the evidence shows the fertilizer was sold for the purposes of cultivation, and that if it was sold by Solá é Hijo it was without the consent of Gandia & Stubbe. The referee's finding is that Gandia & Stubbe furnished this fertilizer for the cultivation of crops, but that the bankrupt, instead of using the material for that purpose, sold it to others.

1. The bankruptcy law fixes certain priorities, and then

In Re Solá é Hijo.

adds (§ 64d) that those prescribed by the local state law shall be enforced. For the purposes of administering the Federal law, Porto Rico is regarded in the same light as a state. Organic Act of Porto Rico, April 12, 1900, § 34. The question, therefore, is, Is this claim entitled to a preference under the law of Porto Rico?

2. It may be regarded as established in this court that claims for fertilizer sold and used for the purposes of cultivation in Porto Rico are creditos refaccionarios, and as such are entitled to a preference under the Porto Rican law. (Decree of this court on report of Special Master Mott in Borinquen Sugar Co. Case, on claim of Hesse, Newman, & Company et al.) It is true that these decisions were in receivership cases, but they were made in applying the local law, and the bankruptcy act also expressly applies the local law of priorities. In a proper case, therefore, these decisions would be binding in bankruptcy.

3. The report of the referee, however, finds that this fertilizer was not used by the bankrupt for purposes of cultivation. It was sold by Gandia & Stubbe for that purpose, but was diverted by the bankrupt to other uses, and was sold by him to outside parties. The purpose of title 17 of the Porto Rico Civil Code is to classify the debts of insolvents and fix the order and manner of their payment. Civil Code, § 1822. The law establishes preferences upon the basis of the application of the supplies or fund in question, not upon the basis of the intention of the parties. For instance, as to personalty (§ 1823), we find in the first class claims growing out of construction or repair, pledges of property in possession of the creditor, expense of transportation within a limited time, board-

In Re Solá é Hijo.

ing bills, and, "6th, credits for seeds and expenses of cultivation and harvesting advances to the debtor, with regard to the fruits of the crops to which they were applied." The word "lien" is not used, and in fact it is not a civil law term, but the lien principle of a charge upon property for something which has gone into it to improve it, and makes an indistinguishable element of the property, is involved in these provisions. Fertilizer is at best of this nature, and the cost is a charge not on the general fund of the debtor, but on the crop which is produced by aid of the seed and expenses of cultivation. There can be no contention in this case that the fertilizer helped make the crop, for it was not applied to the crop at all. Section 1824 relates to realty, and declares as preferences, (2) credits for advances for agricultural purposes, limiting the claim to the crops; (4) mortgage and agricultural credits recorded, limiting these to the property mortgaged; and (6) agricultural loans not recorded, limiting them to the real estate to which the loan relates, postponing it to the preceding five preferences. In case of conflict between preferences, § 1828 provides the order of payment between them so far as relates to real property. These preferences, both as to personalty and the early ones as to realty, presuppose the application of the article or labor (here fertilizer) to the property or crop, which was not the case here. Neither land nor crop benefited by the fertilizer, and there is no reason why either should be laden with a priority on account of the fertilizer. The amendment of March 10, 1910, does not change the principle.

4. It is further contended, however, that § 1824 of the Civil Code covers the case in another way. The civil law attaches great importance to documents, and this section, in subdivisions

4 and 6, as amended by act of March 10, 1910, gives a preference to "(4) mortgage and agricultural credits entered and recorded in the Registry of Property with regard to the property mortgaged, or which has been the object of the agricultural loan." This is the well-known law as to refaccion, the basis of much of the agricultural business of Porto Rico. This law has been enforced by this court many times, and its importance is fully recognized. Like every other statute, however, it is limited by its own terms. In the case at bar the evidence is that this contract was not entered and recorded in the Registry of Property, and therefore subdivision 4 cannot apply. No preference can be claimed under this subdivision.

5. Apparently the gist of the claimants' contention is based upon the other subdivision, 6, of this section. This provides: "(6) Agricultural loans not entered or recorded with regard to the real estate to which the agricultural loan relates, and only with regard to other credits from that mentioned in the four preceding numbers." This raises the question whether the advance of fertilizer is a refaccion when it is made in proper form, but in point of fact the fertilizer is not applied by the debtor as contemplated in the contract. There is in the first place no question that the claim is a good one between the parties; but that is not the point at issue. The bankruptcy law aims to distribute the debtor's property equally among all creditors, subject only to certain priorities established either by the Federal or the local law. The proceeding now ceases to be between two parties to a contract, and is between those two parties and all other creditors of the bankrupt. The preference being an exception, the claim must be shown to be strictly within the terms of the law establishing the exception. This

provision as to refaccion on written contract is not materially broader than the preceding provisions as to refaccion advances without written contract. There may be a difference as to the limitation in the two cases, but that is not material here. The proof does not show under this head any more than under the other, that the fertilizer was used upon the real property of the bankrupt.

6. The older commentators, such as Escriche, define a refaccion creditor as one who puts capital or material into the construction or repair of a building, and Manresa (12 Commentary, 692) says, as to paragraph 3 of article 1923 of the Spanish Civil Code, which is the same as paragraph 4 of the § 1823 of the Porto Rican Code, that the Code has limited itself to what is provided in the mortgage law as to capital destined to the necessary repair and construction of buildings. It is somewhat like the admiralty rule that the last creditor making repairs is allowed the first lien, on the theory that he has preserved the ship *pro tanto* for all the other creditors. It is not necessary to hold with these commentators that refaccion relates only to repair or construction of buildings and vessels, especially when the parties themselves have by contract extended it to other and more strictly agricultural uses. It seem clear, however, that third parties are bound by a contract only if it is written and duly inscribed, which is not the case here, or if it relates to advances which have actually in some way benefited the real property, which also is not the case here. It may be (but it is unnecessary to decide) that the inscription of a written contract will cut off third parties from inquiring into whether the advances called for by the contract were duly applied by the debtor, but no reason is perceived why in a bank-

In Re Solá é Hijo.

ruptcy proceeding other creditors are bound by an uninscribed
contract which the bankrupt has not carried out.

It is no hardship to require a creditor to see to the applica-
tion of the money loaned, if he desires to claim a refaccion.
If he wishes to loan money to be used by the debtor for any
purpose which the debtor may desire, it is easily managed by
means of a mortgage, properly drawn and inscribed. If he
prefers to loan money for refaccion purposes, that is to say,
so as to have a lien on the crop produced or building repaired,
he does so knowing that he must see to the application of the
money loaned. The law gives the protection known as refaccion
less to the contract than to the application of the money. In
the case of a mortgage the law protects the mortgagee; in re-
faccion the law charges the property to the extent that it is
improved in a certain way.

7. Refaccion is an old title in Spanish law. It is found in
the Partidas, and has lasted until the time of the Codes. It
originally was confined to loans for the construction of build-
ings and the like, and it is an "indispensable circumstance" of
the transaction, without which there is no legal lien (hipoteca
tacita), that the money has been actually invested in the object
intended. Supreme Court of Spain, Sentence September 12,
1862, 7 Jur. Civil, 452; Pantoja Repertorio, s. v., credito re-
faccionario. The meaning of the word "refaccion" is making
over, refacere; but the extension of its meaning from recon-
struction of a house to utilizing land in making a crop or other-
wise has not destroyed its nature. It is as essential now as it
was in the time of the Partidas that the money loaned or sup-
plies advanced be actually applied to the object intended by the
loan or advance.

In Re Solá é Hijo.

8. It is contended by Gandia & Stubbe, however, that the referee improperly found on illegal evidence that the fertilizer was misapplied, in that he admitted books of the bankrupt on the motion of the trustee for the creditors. It is not clear that this was error on the part of the referee. The Code of Commerce of Porto Rico requires a business house to keep strict books, and affixes a public penalty for not doing so. Code of Commerce, §§ 33, 47, 48. It is not necessary at this time to determine, however, to what extent these books are proper evidence against the bankrupt. Gandia & Stubbe claim a preference over other creditors. A creditor must prove his claim, and in such a case as this must further prove that he has the preference he sets up. The Supreme Court of Spain, Sentence of November 18, 1876, 35 Jur. Civil, 59; Pantoja Repertorio, s. v., credito refaccionario. It was not necessary for the trustee to disprove the claim of Gandia & Stubbe by books or in any other way; it was the duty of the claimants to furnish affirmative evidence of the facts constituting their preference, that is to say, of the application of the fertilizer to the bankrupt's land. This they did not do, and the referee properly held that their preference had not been proved.

The review, therefore, is denied, and the action of the referee is sustained.

It is so ordered.